UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Theresa St. Laurent

    v.                                  Civil No. 17-cv-053-LM
                                        Opinion No. 2018 DNH 068
Nancy A. Berryhill, Acting
Commissioner of Social Security

**O R D E R**

Theresa St. Laurent seeks judicial review, pursuant to 42 U.S.C. §§ 405(g) & 1383(c)(3), of the decision of the Acting Commissioner of the Social Security Administration, denying her application for disability insurance benefits and supplemental security income. St. Laurent moves to reverse the Acting Commissioner's decision, contending that the Administrative Law Judge ("ALJ") erred in his residual functional capacity assessment and in his Step Five determination. For the reasons that follow, the decision of the Acting Commissioner is affirmed.

**STANDARD OF REVIEW**

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276

F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's factual findings as long as they are supported by substantial evidence. § 405(g); see also Fischer v. Colvin, 831 F.3d 31, 34 (1st Cir. 2016). "Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010).

## BACKGROUND[1]

On April 30, 2013, Theresa St. Laurent applied for disability benefits and supplemental security income, claiming a disability that began on January 2, 2012. St. Laurent alleged that she was disabled because of fibromyalgia and heart problems. She was 46 years old at the time of her application, and had previously worked as a newspaper packager and cleaner, as well as in positions in a greenhouse and in a retail provider selling specialty foods.

I. Medical Records

St. Laurent was admitted to Portsmouth Regional Hospital in April 2011 for chest pain due to a myocardial infarction, which required a stent placement and follow-up cardiac rehabilitation.

---

[1] A detailed statement of the facts can be found in the parties' Joint Statement of Material Facts (doc. no. 10).

Over the next four-plus years, St. Laurent consulted at various times with her physicians at Barrington Family Practice and Walk In Care Center and at the York Family Practice regarding her cardiac condition and chest pains, which she suffered from routinely.

In 2011, she also developed lower back pain that radiated down her right leg, which was related to fibromyalgia. St. Laurent's back pain was exacerbated by a fall in October 2014, and she was continually treated conservatively for the pain, such as with oral medications.

## II. Functional Assessments

On December 15, 2014, physical therapist Danielle Amero completed a functional assessment for St. Laurent. Amero opined that St. Laurent had significant limitations in her ability to do any prolonged lifting, sitting, or standing, and that she was incapable of performing full-time sedentary work.

On January 21, 2015, Holly Brunner James, FNP, completed a "Medical Source Statement (Physical)." In that assessment, James, like Amero, opined that St. Laurent was significantly limited in her ability to do any prolonged lifting, sitting, or standing. James also found that St. Laurent's ability to maintain attention and concentration was significantly compromised by pain and/or prescribed medication, and that she

3

"could reach less than two-and-a-half hours a day."  Doc. no. 10 at 8.[2]

III. Hearing and Decision

On September 15, 2015, a hearing before an ALJ was held on St. Laurent's application for benefits.  St. Laurent was represented by an attorney and testified at the hearing.  Also appearing and testifying were Dr. John Pella, an independent medical expert, and Albert Sabella, a vocational expert.

Dr. Pella discussed St. Laurent's medical records and opined that prior to October 1, 2014, St. Laurent was capable of performing "overall light" work.  As of October 1, 2014, Dr. Pella opined that St. Laurent was limited to sedentary work.

On June 26, 2015, the ALJ issued an unfavorable decision.  The ALJ found that St. Laurent had severe impairments due to heart disease/non-obstructive coronary artery disease and lumbar degenerative disease.[3]  The ALJ also found that St. Laurent's fibromyalgia was not a severe impairment and that her impairments did not meet or equal a listed impairment.

---

[2] The record does not make clear what sort of "reaching" James refers to.

[3] The ALJ gave little weight to the opinions of two state agency consultants that St. Laurent had no severe impairments, as he found those opinions to be inconsistent with Dr. Pella's opinion.

4

Relying primarily on Dr. Pella's testimony and St. Laurent's testimony concerning her daily activities and attempts to return to work, the ALJ concluded that prior to October 1, 2014, St. Laurent had the residual functional capacity to do light work under 20 C.F.R. §§ 404.1567(b) & 416.967(b),[4] except that she could not work at unprotected heights or operate dangerous moving machinery, and she was limited to uncomplicated tasks and required regular work breaks, on average of every two hours during an eight-hour work day due to pain/medication side effects. The ALJ also determined that as of October 1, 2014, St. Laurent was limited to sedentary work, as defined by 20 C.F.R. § 404.1567(a), except that she could not work at unprotected heights or operate dangerous moving machinery, and she was limited to uncomplicated tasks and required regular work breaks, on average of every two hours during an eight-hour work day due to pain/medication side effects.

Based on that functional assessment, the ALJ found that prior to October 1, 2014, St. Laurent could perform her past relevant work as an apartment housekeeper. The ALJ also found that as of October 1, 2014, St. Laurent could perform other jobs

---

[4] Because the pertinent regulations governing disability insurance benefits at 20 C.F.R. Part 404 are the same as the pertinent regulations governing supplemental security income at 20 C.F.R. Part 416, the court will cite only Part 404 regulations. See Reagan v. Sec'y of Health & Human Servs., 877 F.2d 123, 124 (1st Cir. 1989).

5

existing in the national economy, including the representative occupations of assembler and inspector. Therefore, the ALJ found that St. Laurent was not disabled within the meaning of the Social Security Act. The Appeals Council denied St. Laurent's request for review, making the ALJ's decision the Acting Commissioner's final decision.

## DISCUSSION

In support of her motion to reverse the Acting Commissioner's decision, St. Laurent contends that the ALJ 1) erred in his residual functional capacity assessment by improperly substituting his lay judgment for that of the medical experts and 2) erred in his Step Five determination because the vocational expert's testimony relied on improper hypotheticals and was based on an invalid assessment of available jobs. The Acting Commissioner moves to affirm.

In determining whether a claimant is disabled, the ALJ follows a five-step sequential analysis. 20 C.F.R. § 404.1520. The claimant bears the burden through the first four steps of proving that his impairments preclude his from working.[5] Freeman

---

[5] The first four steps are (1) determining whether the claimant is engaged in substantial gainful activity; (2) determining whether he has a severe impairment; (3) determining whether the impairment meets or equals a listed impairment; and (4) assessing the claimant's residual functional capacity and his ability to do past relevant work. 20 C.F.R. § 404.1520(a).

v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). At the fourth step of the sequential analysis, the ALJ assesses the claimant's residual functional capacity, which is a determination of the most a person can do in a work setting despite her limitations caused by impairments, see 20 C.F.R. § 404.1545(a)(1), and his past relevant work, see id. at § 404.1520(a)(4)(iv)). If the claimant can perform his past relevant work, the ALJ will find that the claimant is not disabled. See id. at § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ proceeds to Step Five, in which the ALJ has the burden of showing that jobs exist in the economy which the claimant can do in light of his residual functional capacity assessment. See id. at § 404.1520(a)(4)(v).

I.   Residual Functional Capacity Assessment

A claimant's residual functional capacity ("RFC") is "the most [the claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ is responsible for determining a claimant's RFC based on all relevant evidence in the record. Id. In making that determination, the ALJ is responsible for resolving any conflicts in the evidence. See Gonzalez Garcia v. Sec'y of Health & Human Servs., 835 F.2d 1, 3 (1st Cir. 1987). The ALJ's residual functional capacity assessment is reviewed to determine whether it is supported by substantial evidence.

[Irlanda Ortiz v. Sec'y of Health & Human Servs.](), 955 F.2d 765, 769 (1st Cir. 1991).

St. Laurent contends that the ALJ relied on his lay assessment of the medical evidence when he failed to account for her "fibromyalgia-related functional limitations."[6] Doc. no. 8 at 6. Specifically, she points to Amero's and James's functional assessments that showed much more limited functional capacity than the ALJ found. St. Laurent contends that the ALJ had no basis in the medical record for disregarding the limitations found by Amero and James.

In making his RFC assessment, the ALJ addressed the opinions provided by Amero and James and gave them little weight because he concluded that they were "inconsistent with both the medical expert (Dr. Pella) testimony and the objective medical evidence of record." Admin. Rec. at 18. Dr. Pella testified that James's functional assessment was inconsistent with the record and was based on St. Laurent's "primarily subjective"

---

[6] St. Laurent also appears to contend that the ALJ erred in failing to take into account her fibromyalgia diagnosis itself in his RFC assessment. To the extent St. Laurent intended to raise such a challenge, it is without merit. The diagnosis alone is not relevant to an ALJ's RFC assessment. Rather, the functional limitations associated with a diagnosis govern the RFC assessment. See, e.g., [Whitney v. Berryhill](), No. 1:16-CV-00354-JAW, 2017 WL 2839632, at *9 (D. Me. July 2, 2017) (noting that "the diagnosis of a condition, without more, fails to inform a fact-finder about a condition's severity" and is not sufficient to establish functional limitations).

8

reports of her fibromyalgia symptoms.  Id. at 50.  Dr. Pella also discounted James's assessment because it referenced a lumbar MRI report that was not included with the record.  Id. In addition, Dr. Pella discounted James's opinion concerning St. Laurent's limited ability to maintain attention or concentration due to pain medication since St. Laurent was no longer taking that medication.

With regard to Amero's assessment, Dr. Pella was concerned that the assessment could not be considered "long-term" because Amero completed it shortly after St. Laurent had exacerbated her back pain by falling.  Dr. Pella testified that Amero's and James's functional assessments stood in contrast to St. Laurent's medical records which did not show the limitations in those assessments.

In addition to considering the medical record, the ALJ determined that Amero's and James's opinions were inconsistent with St. Laurent's day-to-day life.  He found that St. Laurent's "extensive daily activities," which included caring for her home, as well as her attempts to return to work, were inconsistent with any significant limitations, such as those contained in Amero's and James's assessments.  Admin Rec. at 18.

In other words, although St. Laurent asserts that the ALJ relied on his "lay interpretation of the medical evidence" when he disregarded the limitations in Amero's and James's opinions,

9

that is not the case. Rather, the ALJ based his RFC assessment on evidence in the record, including Dr. Pella's medical opinion and St. Laurent's testimony concerning her daily activities.[7] As such, St. Laurent has not shown that the ALJ committed error in making his RFC assessment.[8]

II. Vocational Expert Testimony

St. Laurent contends that the ALJ erred in relying on the vocational expert's testimony in making his Step Five determination for two reasons. First, she contends that the ALJ's hypotheticals were based on his erroneous RFC assessment and, therefore, the vocational expert's testimony is invalid. Second, she contends that the vocational expert's testimony concerning job number estimates was "facially inadequate" because it did not provide a specific number of available jobs.

---

[7] St. Laurent does not challenge the ALJ's determination that her testimony concerning her daily activities supports the ALJ's RFC assessment.

[8] St. Laurent also asserts that the additional limitations in the ALJ's RFC assessment were not supported by the medical record. Even if that were true, however, that error is harmless. See Yearling v. Colvin, No. CV 16-11155-NMG, 2017 WL 5196380, at *4 (D. Mass. Nov. 9, 2017) ("If the RFC includes greater limitations than those in a physician's assessment, such limitations cannot be used to discount the ALJ's determination.").

A.  RFC Assessment

The ALJ relied on the vocational expert's responses to hypothetical questions that accurately reflected St. Laurent's limitations as found in the RFC assessment.  As discussed above, that assessment is supported by substantial evidence.  Therefore, the ALJ committed no error.  Sunshine v. Berryhill, No. 16-CV-446-LM, 2018 WL 582576, at *8 (D.N.H. Jan. 29, 2018).

B.  Job Numbers

At Step Five, the ALJ found that beginning on October 1, 2014, St. Laurent had the residual functional capacity to do jobs that exist in significant numbers in the national economy. Relying on the vocational expert's testimony, and finding it consistent with the information contained in the Dictionary of Occupational Titles, the ALJ found that as of October 1, 2014, St. Laurent could perform the job of an assembler and an inspector.

St. Laurent contends that the ALJ erred in relying on the vocational expert's testimony regarding job estimates.  She also criticizes the ALJ for failing to cite specific jobs and their availability in the economy.

1. <u>Aggregate Job Numbers</u>

St. Laurent notes that in opining that an individual with her RFC could perform jobs that exist in significant numbers in the economy, the vocational expert gave job number estimates related to aggregate job groupings, rather than individual jobs. She contends that, as such, his testimony was invalid and the ALJ erred in relying on the vocational expert's opinion in making his Step Five determination.

St. Laurent's challenge to the vocational expert's opinion stems from his testimony that he relied on job statistics published in the Bureau of Labor Statistics and in the census codes published in the Occupational Employment Quarterly. <u>See</u> Admin. Rec. at 76. The vocational expert testified that the numbers derived from those sources are for groups of jobs rather than individual jobs. <u>See</u> <u>id.</u>

St. Laurent raised this issue with the ALJ in a post-hearing motion. She submitted the affidavit of another vocational expert, David Meuse, who stated that the testimony at the hearing was "not supportable" because it relied on aggregate numbers.

The ALJ addressed St. Laurent's objection in his decision:

> The vocational expert testified at the hearing that the source of the numbers of jobs he provided to the hypothetical were from the State Department of Labor, Bureau of Labor Statistics and the census codes from the occupational categories noted in the Occupational

12

> Employment Quarterly which lists groupings of
> jobs. 20 CFR 404.1566 provides that when we determine
> that unskilled, sedentary, light, and medium jobs
> exist in the national economy (in significant numbers
> either in the region where you live or in several
> regions of the country), we will take administrative
> notice of reliable job information available from
> various governmental and other publications. For
> example, we will take notice of - (1) Dictionary of
> Occupational Titles, published by the Department of
> Labor; (2) County Business Patterns, published by the
> Bureau of the Census; (3) Census Reports, also
> published by the Bureau of the Census; (4)
> Occupational Analyses, prepared for the Social
> Security Administration by various State employment
> agencies; and (5) Occupational Outlook Handbook,
> published by the Bureau of Labor Statistics.

Admin. Rec. at 20 n.2. The ALJ further noted:

> The undersigned concludes that the vocational expert
> based his opinion and testimony on his personal and
> professional knowledge of the regional labor market,
> his labor market research, Bureau of Labor Statistics,
> and the Dictionary of Occupational Titles. Obviously,
> the vocational expert had applied his experience and
> knowledge of the regional labor market in using his
> research and the aforementioned sources in providing
> other jobs that the claimant could perform both
> regionally and nationally.

Id. at 21 n.2. Therefore, the ALJ found that the vocational expert's testimony was valid, and he relied on it in his Step Five determination.

St. Laurent contends that the ALJ erred in rejecting her challenge to the vocational expert's testimony. In support, she relies on St. Pierre v. Astrue, No. 1:10-CV-104-JAW, 2010 WL 5465635, at *2-3 (D. Me. Dec. 29, 2010), in which the court remanded the Commissioner's decision, in part, because in making

13

his Step Five determination, the ALJ relied on the vocational expert's testimony based only on publications that provided aggregate job groupings. Assuming for the sake of argument that a vocational expert may not rely solely on publications that discuss aggregate job groupings,[9] that is not what the vocational expert did in this case. In response to the ALJ's questions, the vocational expert testified that the job numbers he provided were consistent with information in the Dictionary of Occupational Titles and Selected Characteristics of Occupations, as well as with his own knowledge of the regional labor market. See Admin. Rec. at 71. Therefore, unlike the expert in St. Pierre, the vocational expert here used his personal knowledge and other documentary evidence to substantiate his job numbers. In short, St. Laurent has not shown that the ALJ committed error in relying on the vocational expert's testimony. See Nichols v. Astrue, No. CIV.A. 10-11641-DPW, 2012 WL 474145, at *13 (D. Mass. Feb. 13, 2012) (holding that the ALJ did not err in relying on vocational expert's testimony concerning aggregate job groupings and distinguishing St. Pierre because the vocational expert testified that the aggregate numbers were "the

---

[9] Contra Vandevoort v. Berryhill, No. 3:16-CV-05493-DWC, 2017 WL 413203, at *8 (W.D. Wash. Jan. 31, 2017) (holding that the ALJ's reliance on vocational expert's testimony relying on only publications that provided aggregate job numbers was not improper).

14

best information that's out there"); Woodard v. Astrue, No. 1:10-CV-327-DBH, 2011 WL 2580641, at *5 (D. Me. June 28, 2011), report and recommendation adopted, No. 1:10-CV-327-DBH, 2011 WL 2890371 (D. Me. July 19, 2011) (distinguishing St. Pierre because, unlike in that case, the vocational expert testified that the aggregate job groupings were consistent with her professional experience).

2. Specific Occupations

St. Laurent asserts that the ALJ failed to cite specific occupations and the exact number of available jobs and argues, in brief fashion, that such a failure requires reversal. She cites Morris v. Astrue, No. 3:12-CV-538-TLS, 2014 WL 1259958, at *11 (N.D. Ind. Mar. 26, 2014), in which the court remanded the case for further proceedings because the ALJ failed to comply with Social Security Ruling 83-14. That ruling requires that:

> Whenever a vocational resource is used and an individual is found to be not disabled, the determination or decision will include (1) citations of examples of occupations/jobs the person can do functionally and vocationally and (2) a statement of the incidence of such work in the region in which the individual resides or in several regions of the country.

SSR 83-14, 1983 WL 31254, at *6.

In Morris, the ALJ adopted the vocational expert's testimony that an individual with the claimant's RFC could do

15

"at least 120,000 unskilled jobs at the medium exertional level in Indiana." Morris, 2014 WL 1259958, at *11. The vocational expert did not supply any specific examples of jobs that an individual with the claimant's RFC could do. Here, however, the vocational expert provided several specific jobs that could be performed by an individual with St. Laurent's RFC, including an electronics worker, an assembler, and an inspector. Thus, the ALJ complied with SSR 83-14.[10]

## CONCLUSION

For the foregoing reasons, the claimant's motion to reverse and remand (doc. no. 8) is denied. The Acting Commissioner's motion to affirm (document no. 9) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

March 28, 2018

cc: Counsel of Record

---

[10] St. Laurent also contends that the ALJ erred in relying on the vocational expert's testimony because "some of the cited jobs are no longer available as unskilled work." Doc. no. 8 at 15. However, she fails to provide any support for that assertion.

16